Mr. Justice James
delivered the opinion of the Court:
This is an action to compel the Commissioner of Patents to furnish to the relator a certified copy of an application for letters patent filed in the Patent Office by Thomas Edison on December 15, 1880, together with a copy of the record of the proceedings in connection with such application.
The petition states, in substance, that the relator is defendant in a suit in equity brought in the Circuit Court of the United States for the southern district of New York by the Edison Electric Light Company for the alleged infringement of certain letters patent for incandescent lamps, now owned by said company as assignee of Edison; that, in order *224 to make out a case of infringement, the complainant in that, suit has, through its expert, put a very broad construction on the claims of its patent, and that Edison, acting in, the interest of his assignee, the complainant, has made-application for another patent, in which he claims as a new invention the same thing which his assignee seeks by construction to include in the existing patent. The relator states, as the ground of his right to copies, that it- proposes to offer the pending application for letters patent, and the accompanying papers, as evidence in the said suit in equity; to show the limitation which the patentee and his assignee have themselves put upon the patent now in suit.
It is claimed that Section 892 of the Revised Statutes has imposed upon the Commissioner of Patents a ministerial duty to furnish these copies. That section is in the following words: “Written or printed copies of any records,, books, papers, or drawings belonging to the Patent Office,. and letters patent, authenticated by the seal and certified by the Commissioner or Acting Commissioner thereof shall be evidence in all cases wherein the originals could be evidence, and any person making application therefor, and paying the fee required by law, shall have certified copies-thereof.”
It is insisted that this language, if considered separately from any other provision of the statute, would include every class of papers ; and that when considered in connection with Section 4902 of the Revised Statutes, it still gives the right to have copies of every class of papers except those mentioned in the latter section. The section referred to is in the following words: “ Any citizen of the United States who makes any new invention or discovery, and desires further time to mature the same, may, on payment of' the fees required by law, file in the Patent Office a caveat-setting forth the design thereof, and of its distinguishing-characteristics, and praying protection for his right until, he shall have matured his invention. Such caveat shall *225 be filed in the confidential archives of the office and pre-= served in secrecy, and shall be operative for the term of one year from the filing thereof; and if application is made within the year by any other person for a patent with which such caveat would in any manner interfere, the Commissioner shall deposit the description, specification, drawings, and model of such application in like manner in the confidential archives of the office, and give notice thereof to the person by whom the caveat was filed,” cfec.
The argument, on the part of the relator, is that Section 892 of the Revised Statutes, was intended to state a general rule that applicants should have copies of papers of every class not expressly excepted by some other provision of the statute; and that Section 4902, which was taken from the same original statute, was intended to state the sole exception to that rule; in other words, that the two sections, construed together, intended that any person who proposed to use them in evidence, was entitled to have copies of any papers whatsoever belonging to the Patent Office, except caveats and applications for patents interfering therewith..
We think that neither of these contentions is correct.
It is not the primary and essential purpose of this statute to establish, or to define the extent of the right of private persons to have copies of papers belonging to the Patent Office. Its primary object was to provide a rule of evidence by making certified copies of originals, which would be evidence, as competent in evidence as the originals, and it was only incidentally to that end that it provided that such copies should be obtainable on payment of the fees required by law. That consideration is important in determining whether this provision intended that papers and documents of every class whatsoever, except caveats and applications interfering therewith, should be thrown open to private inspection and use by means of copies, and as a matter of right. We may as well say at once that nothing but the *226 clearest expression of such an intention would justify such an application of the statute.
The general inclination of the legislature in reference to copies of documents in the executive departments and offices should be considered in connection with this particular provision, and may be gathered from statutes in pari materia. Wo refer to the following examples:
The Act of the 15th of 'September, 1789,1 Stat. at Large, 69, relating to the Department of Foreign Affairs, simply provided that “all copies of records and papers of the said office, authenticated, etc., * * * shall be evidence equally as the original record or papers.”
The Act of July 4, 1836, Sec. 4, Vol. 5, page 117, provided that “ copies of any records, books, papers or drawings belonging to said office (the Patent Office) shall be competent evidence in all cases in which the original records, books, papers or drawings would be evidence. And any person making application therefor may have certified copies of records, drawings and other papers deposited in said office, on payment,” etc.
The Act of February 22, 1849, Sec. 3, Vol. 9, page 347, provided that “all books, papers, documents and records of the War, Navy, Treasury and Post Office Departments, and of the Attorney General’s office may be copied and certified under seal in the same manner as those of the State Department may now be, and with the same force and effect,” etc.
The Act of May 31, 1854, Sec. 2, Vol. 10, page 297, provided that “ all books, papers, documents and records in the Department of the Iuterior may be copied and certified, under the seal of that Department, in the same manner as those of the other Executive Departments may now by law be, and with the same force and effect,” etc.
These provisions, relating to the principal departments, have been consolidated in Section 882 of the Eevised Statutes, as follows: “ Copies of any books, records, papers or documents in any of the Executive Departments, authen *227 ticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof.”
Finally, by the Act of July 8, 1870, Sec. 57, Vol. 16, page 207, the provisions now found in Section 882 were' enacted.
It will be observed that the language of the original statutes which provided for copies of papers in the departments was permissive. It suggested the use of discretion. None of them indicated what classes of papers should be subjects of copy, much less that all papers, without discrimination, should be accessible for that purpose. None of them impaired the power of the heads of those departments to protect from publicity such papers as they should think it necessary, for reasons of public policy or interest, to withhold from private inspection or use. And it was a matter of notoriety that such protection was actually enforced in all of the great departments. Of course that practice had the sanction of the legislature.
Now, when this rule of evidence by copies was extended to papers and records in the Patent. Office, was there anything in the business of that office to suggest a departure from that policy? Was there an antecedent probability that Congress would peremptorily require the Commissioner to open the door to frauds by disclosing to competitors the pending and incomplete transactions of his office ? The opportunities for false pretences of priority which would be afforded by knowdedge of an invention w'hich was yet unprotected by a patent, were understood by the framers of this law', and some of its provisions show that they had in mind the importance of secrecy as a protection of inventors’ rights. For example, when they provided, by sections 43, 44 and 45 (Rev. Stat., Secs. 4905, 4906 and 4908) for the taking of depositions to be used in cases pending in the Patent Office, they were careful to add that no witness should be deemed guilty of contempt for refusing, to disclose any secret invention or discovery made or owned by *228 himself. When one section thus defends, even against, semi-judicial inquiry, an inventor’s right to secrecy, until he secures the protection of a patent, it would be unreasonable to construe the general language of another section as intending that an inventor’s right of secrecy may be nullified by publishing a copy of his application for a patent. It is difficult to perceive any difference, in this respect, between the cases of the witness and of the applicant for a patent; the risk of fraudulent anticipation is the same in both cases, and both are on principle entitled to the same protection against disclosure. We think, therefore, that nothing but the most explicit expression of intention would justify an intepretation which would involve an inconsistent discrimination. Let us see whether the language of Section 882 compels us to hold that an invention shall be disclosed to the world by furnishing a copj'- of the pending application for a patent.
As we have said, the language of this section is general, and omits to specify what classes of papers shall be subject to copy, or that any class is not thus subject. We think, however, that it is limited and applied by the context. When considered in connection with the purpose for which copies are authorized by this section — namely, for use as-evidence in judicial proceedings — -its scope is limited by that purpose. We do not' mean that the Commissioner may determine that certain copies are not authorized, on the ground that, in his opinion, they would not be admissible in evidence in the particular suit for which they are demanded, or for the purpose proposed by the applicant-We mean only that the very fact that this provision authorizes copnes for use in evidence indicates that the statute refers to papers and records connected with and going to show title, whether the title of the applicant or of' his adversary in the suit referred to. The statute plainly includes papers of this kind, and we think it is satisfied by applying it only to this class. Presumptively the object of *229 -requiring the Patent Office to furnish evidence for judicial use is the furtherance of the purpose for which the Patent ■Office itself exists — namely, the ascertainment and establishment of title to inventions and discoveries. It follows that the papers and documents to be furnished are to relate to ’title and tend to establish it. This would exclude pending applications, which cannot tend to establish title.
A construction which thus applies the statute is, we think, the only one that is consistent with public policy and with the essential right of inventors to enjoy the protection of secrecy until they shall have secured the protection of letters patent; and we conceive that the only reasonable construction of the general language of the statute is one which satisfies these considerations.
We are, therefore, of opinion that Section 882 of the Revised Statutes, does not require or authorize the Commissioner of Patents to furnish copies of pending applications for patents or of papers connected with such applications.
It is proper to add that we have reached this conclusion after full consideration of the views expressed in Pollok’s ‘Case, 7 Mackey, 14.

The writ of mandamus is refused.